UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERNEST EDWARD GAINES,

                Plaintiff,

        -against-

ASTRAZENECA PHARMACEUTICAL,

                Defendant.

21-CV-5323 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated in Texas, proceeds *pro se* and *in forma pauperis*. On April 22, 2024, Plaintiff moved for leave to file an amended complaint. (ECF 61.) By order dated July 30, 2024, the Court granted Plaintiff's motion and directed the Clerk of Court to file Plaintiff's proposed third amended complaint as the operative complaint.

For the reasons set forth below, the Court dismisses Plaintiff's third amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

## BACKGROUND[1]

In his initial complaint, Plaintiff asserted (1) claims against AstraZeneca

Pharmaceuticals, LP (AstraZeneca), which produces the medication Seroquel, and (2) claims

against two law firms for their handling of a 2009 class action suit against AstraZeneca, in which

he was a class member. *See Fishman et al. v. AstraZeneca Pharmaceuticals, LP, et al.*, Index No.

09109049 (N.Y. Sup. Ct.). Plaintiff alleged that, for a six-month period (from December 21,

2005, to June 12, 2006), while he was at the Dallas County Jail in Texas, he was prescribed

Seroquel for his schizophrenia and bipolar disorder. (ECF 2 at 22.) Six years after Plaintiff's

treatment with Seroquel, in 2012, the class action suit settled. Counsel notified Plaintiff and other

class members that recovery for the suit was less than expected because "the Seroquel team was

never able to offer sufficient scientific proof that Seroquel causes diabetes-related injuries." (*Id.* at

33.) Plaintiff's share of the settlement was $11,214.95 and, after deduction of attorney's fees and

costs, he received a settlement payment of $6,336.71. (*Id.* at 35.) At some point thereafter, Plaintiff

read in a Bloomberg News article that the average payout for settlement of claims that Seroquel

caused diabetes was $25,000. In 2014, approximately two years after settlement, Plaintiff was

diagnosed with diabetes. (*Id.* at 5.)

---

[1] Plaintiff's third amended complaint does not include all of the background facts that were alleged in his initial complaint about his use of Seroquel, the 2009 class action, or his receipt of a settlement payment in 2012. The Court therefore takes background information from the initial complaint (ECF 2).

By order dated October 12, 2021, the Court held that Plaintiff had not pleaded facts establishing the citizenship of the defendants and that the addresses that Plaintiff had provided suggested that the attorneys might be, like him, citizens of Texas. The Court notified Plaintiff that he could amend his complaint to drop any nondiverse defendants destroying diversity jurisdiction, and granted him repeated extensions of time to do so.[2] (ECF Nos. 8, 11, 13, 18, 20.) Plaintiff's third amended complaint is now the operative complaint.

In his third amended complaint, Plaintiff alleges that his claim arose on May 7, 2014, when he was "Fingerstick Glucose Diagnosed Diabetic."[3] (ECF 69 at 5.) He further alleges that his attorneys knew in 2009 that he was "a diabetic already" because he sent them a copy of his "glucose fasting test." (ECF 69 at 6.) Plaintiff attaches a copy of his August 26, 2009 glucose fasting test, which identified whether his glucose fasting score was low, high, or critical; the form shows "L," for low. (*Id.* at 10.) He also attaches a letter dated December 21, 2009, addressed to the "litigation support clerk" for his counsel, which states that he was "diagnosed as pre-diabetic with hypoglycemia low blood sugar on August 26, 2009 after the glucose test was done." (*Id.* at 12.)

---

[2] The Court dismissed the action when Plaintiff failed to file an amended complaint within the extended deadline (ECF 21, 22), but then vacated the order of dismissal (ECF 31) after Plaintiff eventually filed an amended complaint (ECF 23). Once the action was reopened, the Court reviewed the amended complaint and, by order dated September 26, 2022, dismissed it for lack of subject matter jurisdiction, on the ground that Plaintiff had failed to plead facts establishing either federal question or diversity jurisdiction. By order dated September 7, 2023, the Court granted Plaintiff's motion, under Rule 60(b) of the Federal Rules of Civil Procedure, in which he sought leave to reopen this action and file a second amended complaint dropping non-diverse defendants. Plaintiff filed a second amended complaint on March 27, 2024, and then moved for leave to file his proposed third amended complaint.

[3] The Court quotes verbatim from the complaint. All spelling, grammar, and punctuation are as in the original, unless noted otherwise.

Plaintiff explains that the settlement sum that he received was determined by a matrix, where clients with different exposure to the drug and different injuries received different amounts. Plaintiff argues:

> The 'matrix' should be determined by Doctor diagnose in plaintiff gaines complailt Plaintiff Gaines was not seen by the defendant doctor and this is the job of the settlement administrator, attorny's, and the Court.

(*Id.* at 7.)

Plaintiff states that, according to a Bloomberg news source, the "Seroquel Diabetes Settlement average payout [was] $25,000." (Id.) He argues that "attorney Mr. Nations shortage plaintiff on the settlement by $14,000." (*Id.*) Plaintiff notified his attorney that he "was to file new class claim reconciliation." (*Id.* at 6.) Plaintiff "put AstraZeneca Pharmaceutical and both attorneys on notice of the shortage and they have d[one] nothing to compensate the plaintiff." (*Id.* at 7.)[4] Plaintiff attaches a letter with an address for the attorneys in Texas, which is where Plaintiff also resides. Plaintiff has named AstraZeneca as the sole defendant in this case.

In terms of the relief that he is seeking, Plaintiff asserts that he:

> has been shortage on compensation for his diabetes damage for life threaten disease from the level of the matrix-type system client categorized by the severity of the injury, and to the exposure to the drug at least for actual and compensatory damages in an amount in excess of $75,000.

(*Id.*)

Plaintiff asserts the following claims: "liability damage claim; conflict of interest claim breach of contract claim. Fraudulent concealment claim. Negligence claim; Discovery Claim;

---

[4] Plaintiff sent documents to the state court where the class action was litigated. The documents were all captioned for either the "United States Supreme Court for the State of New York" or "United States District Court for the State of New York" (ECF 2-1 at 1); the state court, apparently understanding that Plaintiff intended to file in federal court because his papers were captioned for a court of the "United States," directed Plaintiff to send his papers to this court.

Civil Rule 23 Claim." (*Id.* at 4.)

## DISCUSSION

**A.    Subject Matter Jurisdiction**

Plaintiff invokes both federal question and diversity jurisdiction. The court can exercise federal question jurisdiction when a plaintiff's claims arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Despite Plaintiff's having had multiple opportunities to amend his pleadings, he does not identify any federal law that is the basis for his claims against Defendant AstraZeneca. Plaintiff thus does not meet his burden of showing that the Court has federal question jurisdiction of this matter.

The Court does appear to have diversity jurisdiction of Plaintiff's claims against AstraZeneca. For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). Plaintiff alleges that he is a citizen of Texas. (ECF 69 at 4.)

The sole defendant is Astrazenca Pharmaceuticals, LP, located at 1800 Concord Pike in Wilmington, Delaware, named herein as "Astrazenca Pharmaceutical." (*Id.* at 3.) Plaintiff states that Defendant is incorporated in New York and Delaware, with its principal place of business in

New York.[5] (ECF 69 at 2.) "For purposes of federal diversity jurisdiction, partnerships are citizens wherever their partners are, whereas corporations have citizenship distinct from their shareholders." *Moore v. United States*, 144 S. Ct. 1680, 1707 (2024) (citing *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187-189 (1990)). Because AstraZeneca is not a citizen of Texas, it appears that the citizenship of the parties is diverse. Plaintiff also seeks in excess of $75,000 in damages. The Court therefore considers whether Plaintiff's allegations are sufficient to state a claim arising under state law.[6]

**B.    State Law Claims**

Plaintiff asserts claims against Defendant AstraZeneca for "liability damage" and "negligence," but he also alleges that in 2012, he settled his claims against AstraZeneca arising from his use Seroquel in 2005-06. Plaintiff does not indicate that his claims arise from a subsequent use of Seroquel, and any claim for further damages from AstraZeneca thus implicate the 2012 release of liability. Plaintiff invokes "breach of contract, "[f]raudulent concealment" and. "[d]iscovery [c]laim." (ECF 69 at 4.)

New York law emphasizes that a release of liability in a settlement agreement "may [not] be treated lightly." *Mangini v. McClurg*, 24 N.Y.2d 556, 563 (1969). On the contrary, the Court of Appeals explains that a release of liability:

---

[5] The Court takes judicial notice of public records stating that "AstraZeneca Pharmaceuticals LP is . . . a citizen of Delaware and Sweden." *Garcia v. AstraZeneca Pharmaceuticals LP*, 1:16-CV-00863-JAM (D. Ct. filed June 3, 2016) (ECF 1 at 14); *see also Lear v. AstraZeneca Pharmaceutical LP*, No. 17-CV-250 (M.D. Fl.) (ECF 6 at ¶ 22) ("AstraZeneca Pharmaceutical LP's general partner is AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden. AstraZeneca Pharmaceutical LP's sole limited partner is Zeneca Inc., a Delaware corporation with its principal place of business in Delaware.").

[6] A federal court ordinarily applies the law of the forum in which the court is located. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Plaintiff's claims arise from the litigation of his claims against Astrazeneca in New York.

is a jural act of high significance without which the settlement of disputes would
be rendered all but impossible. It should never be converted into a starting point
for renewed litigation except under circumstances and under rules which would
render any other result a grave injustice. It is for this reason that the traditional
bases for setting aside written agreements, namely, duress, illegality, fraud, or
mutual mistake, must be established or else the release stands.

*Id.* at 563-64.

A plaintiff who succeeds in establishing one of these traditional grounds for setting aside

a release of liability, may request damages that are "the difference between what would have

been a fair and honest settlement and the amount . . . accepted in reliance on the alleged

misrepresentations of defendant." *Harding v. Naseman*, No. 07-CV-8767 (RPP), 2008 WL

4900562, at *6 (S.D.N.Y. Nov. 14, 2008) (citation omitted); *see also Slotkin v. Citizens Casualty

Co.*, 614 F.2d 301, 312 (2d Cir. 1979) ("[O]ne who has been induced by fraudulent

misrepresentation to settle a claim may recover damages without rescinding the settlement.").

Plaintiff makes two arguments: (1) his attorneys, who are not parties to this action,

"short[ed] him" $14,000 by paying him less than the average reported payout in other Seroquel

class action suits; and (2) he had reported to his attorneys in 2009, before settlement, that he was

"pre-diabetic," and after settlement, in 2014, he was diagnosed as diabetic. (ECF 69 at 5-6.)

Turning to Plaintiff's first contention, the allegation that he was "short[ed]" $14,000,

because he received less than the average settlement payout for similar litigation against

AstraZeneca is not a basis for setting aside the release under any theory. An average is simply

that – a typical value; some settlement amounts will be higher than the average and some lower.

The fact that Plaintiff's settlement payout was lower than average, in itself, does not suggest any

reason that the release should not stand. Moreover, although AstraZeneca is the sole defendant in

this action, Plaintiff's allegations of wrongdoing are aimed at non-party class counsel, not the

named defendant, AstraZeneca. *(*ECF 69 at 6) ("Mr. Nations shortage plaintiff on the settlement by $14,000.").[7]

Second, Plaintiff suggests that developments in his health in 2014, two years after the settlement agreement, require that he receive additional compensation He indicates that he raised this issue unsuccessfully with his attorneys and the claims administrator. (*Id.* at 7.) Plaintiff relies on several of the traditional grounds for setting aside a release of liability, and the Court considers these in turn.

### 1.    Breach of Contract

Plaintiff invokes breach of contract as a basis for his claims against Defendant AstraZeneca. "[T]o plead a cause of action for breach of contract, a plaintiff usually must allege: (1) a contract; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022). Plaintiff can be understood as alleging that he was a party to the 2012 settlement contract with Defendant AstraZeneca. There are no factual allegations in the third amended complaint suggesting that Defendant AstraZeneca failed to perform its obligations under the settlement agreement. Plaintiff alleges that he now would be classified differently under the matrix that established the 2012 payouts; he does not allege that he was not paid as agreed in 2012 or that there was any provision in the agreement for additional payment for later arising injuries.  Plaintiff thus fails to state a claim against Defendant AstraZeneca for breach of contract.

---

[7] In the Third Amended Complaint, Plaintiff dropped his claims against attorney Nations, presumably because Nations's presence as a defendant destroyed diversity jurisdiction.

### 2.    Mutual Mistake

The New York Court of Appeals has explained when a mutual mistake at the time of the release allows it to be set aside:

> [T]here has been delineated a sharp distinction between injuries unknown to the parties and mistake as to the consequence of a known injury. A mistaken belief as to the nonexistence of presently existing injury is a prerequisite to avoidance of a release. If the injury is known, and the mistake . . . is merely as to the consequence, future course, or sequelae of a known injury, then the release will stand.

*Mangini v. McClurg*, 24 N.Y.2d 556, 564 (1969).

In other words, the "future course" of an injury known at the time of release does not provide a basis for setting aside a release. Here, Plaintiff alleges just such a progression of a known injury. He alleges that both he and attorneys representing him in the New York class action knew at the time that he entered into the settlement agreement and was compensated that he was "pre-diabetic" with hypoglycemia. The fact that Plaintiff later developed diabetes does not suggest that there was any mutual mistake in 2012, at the time of entering into the settlement agreement. Plaintiff thus fails to meet his burden of demonstrating that the release should not stand because of mutual mistake. *See Mangin*i, 24 N.Y.2d at 563 ("In the instance of mutual mistake, the burden of persuasion is on the one who would set the release aside.").

### 3.    Fraudulent Concealment

Plaintiff cites "fraudulent concealment" as another basis for claiming additional damages from Defendant AstraZeneca. Under New York law, "one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement." *Slotkin*, 614 F.2d at 312; *Harding*, WL 4900562, at *6 (as a remedy for fraud, a plaintiff may request damages that are "the difference between what would have been a fair and honest

settlement and the amount . . . accepted in reliance on the alleged misrepresentations of defendant").

Plaintiff's complaint is wholly bereft of factual allegations that Defendant AstraZeneca concealed or misrepresented anything in order to fraudulently induce Plaintiff to settle his claims. Plaintiff's conclusory reference to "fraudulent concealment" in his third amended complaint, without any factual allegations that Defendant AstraZeneca misrepresented or concealed anything, does not suggest any reason the release cannot stand. Moreover, as with Plaintiff's other allegations, his claims for fraud also appear to be time-barred.[8]

In sum, Plaintiff's allegations that he developed diabetes after having settled his claims against AstraZeneca in 2012 do not provide a basis for setting aside the release based on breach of contract, mutual mistake, fraudulent misrepresentation or any other recognized basis for setting aside a release. The Court therefore dismisses Plaintiff's third amended complaint seeking additional damages from Defendant AstraZeneca for failure to state a claim on which relief can be granted.

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because

---

[8] As set forth in the Court's prior orders, Plaintiff's claims are deemed filed, at the earliest, on June 9, 2021, when he gave the original complaint to prison officials for mailing. (ECF 2 at 6.) That date is approximately nine years after he received the settlement payout in 2012, and at least seven years after the latest date he states that he was diagnosed with diabetes, in 2014. Accordingly, the claims are also time-barred. *See* N.Y. C.P.L.R. § 213(8) (claims based on fraud must be brought within "the greater of six years from the date the cause of action accrued or two years from the time the Plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it"); Plaintiff has not suggested, in his third amended complaint, any basis for tolling of the limitations period.

Plaintiff's third amended complaint gives no indication that the defects can be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

Plaintiff's third amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:   August 25, 2024
            New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge